27378, 27404.   GRANT v. FOURTH NATIONAL BANK OF COLUMBUS; and vice versa.

ARGUED SEPTEMBER 11, 1972—DECIDED NOVEMBER 30, 1972— REHEARING DENIED DECEMBER 18, 1972.

*Hirsch & Hodges, M. Douglas Hodges, Milton Hirsch, Jacob Beil,* for appellant.

*Kenneth M. Henson, Joseph L. Waldrep,* for appellee.

GRICE, Presiding Justice. The issues in this appeal and cross appeal emanate from a judgment directing an administrator as to a claim involving certain real property of the estate.

The administrator, the Fourth National Bank of Columbus, filed in the Superior Court of Muscogee County a petition for direction with regard to the claim of Mrs. Hattie Rogers Grant against the estate of Blanchard Anthony. The petition alleged uncertainty as to what steps the administrator should pursue and prayed for relief including cancellation of a security deed.

The creditor, Mrs. Grant, filed an answer denying the essential allegations. She also interposed a counterclaim praying that the court grant specific performance vesting title to said property in her, or in the alternative a judgment in the amount of the note with interest.

The counterclaim, insofar as necessary to recite here, made the allegations which follow.

Blanchard Anthony died on December 21, 1970, and the bank was appointed as the administrator of his estate.

On July 6, 1962, Mrs. Grant entered into an agreement with Mr. Anthony to lend him ten thousand dollars, to be evidenced by a promissory note of even date and a security deed on certain land therein referred to. They agreed that if Mrs. Grant would make such loan and if it was not paid at the time of his death then Mrs. Grant, if still living, might have the land for the amount of the security deed. A copy of the agreement was annexed to the complaint.

Pursuant to this agreement, Mrs. Grant, on July 6, 1962, lent to Mr. Anthony the ten thousand dollars. Mr. Anthony, at the same time and as an integral part of the agreement, delivered to Mrs. Grant his promissory note, a copy of which was attached. Also at the same time and as an integral part of the agreement in order to secure payment of the note and as collateral security therefor, Mr. Anthony delivered to Mrs. Grant a properly executed security deed, a

copy likewise included. The security deed was executed and delivered upon the understanding and agreement that in case Mr. Anthony should pay Mrs. Grant the indebtedness with interest as agreed, then the security deed should be released of record; otherwise it should remain in full force and effect, and if not paid before Mr. Anthony's death, if Mrs. Grant was still in life, then she should have the property for the amount of the security deed.

Pursuant to the agreement, Mrs. Grant made the loan of ten thousand dollars and took in return Mr. Anthony's note for ten thousand dollars, dated July 6, 1962, which was secured by the security deed of the same date, a copy of the plat referred to therein being attached to the complaint. She did all things required of her by the terms of the agreement.

At the time of Mr. Anthony's death nothing had been repaid on the loan. In accordance with the agreement the property thereby vested in Mrs. Grant immediately upon Mr. Anthony's death and she is entitled to have the property conveyed to her.

The value of the land at the time of Mr. Anthony's death was ten thousand dollars.

No proceedings have been had at law for recovery of the loan, and there is now due ten thousand dollars with interest from July 6, 1962, in accordance with the terms of the note.

Mrs. Grant, on or about January 25, 1971, duly presented to the administrator a demand that it execute a deed conveying to her the property and at the same time advised it that she was prepared to tender the security deed; but the administrator refused to accept the tender and refused to give its assent to the conveyance and to execute the required documents of conveyance.

She then tendered to the court the note and security deed, marking the note "paid in full," declaring the security deed to be satisfied and authorizing the court to cancel it of record.

She alleged that title to the property should be decreed in

her in accordance with the agreement, and that the administrator should be required to specifically perform the agreement, and execute and deliver to her a proper deed.

The prayers, insofar as they relate to specific performance, were as follows: that the court enter a decree declaring the agreement to be legally binding; that title to the property described in the security deed be decreed to be in Mrs. Grant; that the agreement be ordered specifically performed; and that the administrator be directed to execute a proper deed conveying to her the title to the property in fee simple.

Upon the trial, at the close of its evidence, the administrator moved to dismiss or strike Mrs. Grant's counterclaim upon several grounds. The court overruled each ground except one which asserted, in essence, that specific performance could not be decreed because the security deed contained a description of the land which was vague and void for indefiniteness. Based upon this ground alone the trial court dismissed and struck the counterclaim.

It then directed a verdict for Mrs. Grant in the sum of $10,000 principal plus simple interest on the note.

In the appeal by Mrs. Grant (Case No. 27378) she enumerates as error the following: that the court erred in granting the administrator's motion to dismiss on the ground that the description in the security deed was void for indefiniteness; that assuming arguendo that it was void and indefinite, the court should have allowed her an opportunity to introduce extrinsic evidence to correct it; and that the court improperly refused to allow the note to be computed on a compound basis and directed a verdict based upon mere simple interest.

In the cross appeal (Case No. 27404) the administrator contends essentially that the trial court erred in not dismissing or striking Mrs. Grant's counterclaim seeking specific performance upon several *other* grounds. It is insisted that the agreement is invalid for the following reasons: (1) that it attempts to engraft an additional consideration upon the note and security deed; (2) that it is vague and ambigu-

ous; (3) that it is testamentary in character and not executed with requisite formalities; (4) that Mrs. Grant has been guilty of laches; and (5) that it lacks consideration. The administrator also enumerates as error (6) the court's refusal to admit in evidence certain documents, and (7) its direction of a verdict for Mrs. Grant without giving the administrator any credits for payments on her claim.

■ Before considering the issues raised by the administrator's motion to dismiss or strike Mrs. Grant's counterclaim seeking specific performance or in the alternative a monetary recovery, reference to some principles of pleading are deemed appropriate.

Insofar as general rules of pleading are concerned, a counterclaim stands upon the same footing as an original claim.

The Civil Practice Act provides in material part that "[A]ny pleading which sets forth a claim for relief, whether an original claim [or] counterclaim . . . shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief . . ." *Code Ann.* § 81A-108 (a).

Each ground of the motion here, to dismiss or strike the counterclaim, will be treated as a motion to dismiss for failure to state a claim upon which relief can be granted.

Thus, just as with an original claim, a motion to dismiss a counterclaim for failure to state a claim upon which relief can be granted should not be granted unless it appears to a certainty that the defendant would be entitled to no relief under any state of facts which could be proved in support of the counterclaim, and if within the framework of the complaint evidence may be introduced which will sustain a grant of relief to the defendant, the counterclaim is sufficient. See for statement of the foregoing principles, *Bourn v. Herring,* 225 Ga. 67 (3) (166 SE2d 89); *Mitchell v. Dickey,* 226 Ga. 218, 220 (173 SE2d 695).

■ We now proceed with Mrs. Grant's first enumeration, that the trial court erred in granting the administrator's motion to dismiss the counterclaim on the basis that the

description of the security deed in question is void for lack of definiteness.

In adherence to the foregoing principles of pleading we do not regard the counterclaim here as subject to dismissal upon this ground.

On the contrary we deem the description to be sufficient.

The description is as follows: "All that lot, tract and parcel of land situate, lying and being in Land Lots 29, 36 and 37 of the Ninth District of Muscogee County, Georgia, said property containing approximately 109.1 acres, more or less, and being more particularly described as follows: Beginning at the point where Land Lots 28, 29, 36 and 37, said District, intersect and from said beginning point, thence westerly along the line dividing Land Lots 28 and 29 a distance of 250 feet, more or less, to a point; thence, in a northerly direction a distance of 1,365 feet, more or less, to a point on the right of way line of the Southern Railway property; thence along said railroad right of way in a northwesterly direction a distance of 280 feet, more or less, to a point; thence, easterly a distance of 3,020 feet, more or less, to a point on the northern side of the Columbus-Manchester Expressway; thence, south 42 degrees, 35 minutes west along the said expressway, a distance of 2,106.2 feet to a point where the northern side of the expressway intersects the line dividing Land Lots 36 and 37, said District; thence west along the line dividing Land Lots 36 and 37, said District, a distance of 700 feet, more or less, to a fence; thence southerly a distance of 650 feet, more or less, along said fence, to a point on the northern side of said expressway; thence, southwesterly along the Northern side of said expressway a distance of 1,342.2 feet to a point where the northern line of the expressway intersects the line dividing Land Lots 28 and 37, said District; thence, north along the line dividing Land Lots 28 and 37 a distance of 1,595 feet, more or less, to the point of beginning. This property being that certain property identified as Blanchard Anthony, 109.1 acres, more or less, on that certain plat dated May 29, 1962 by J. Dayton Willis, C. E., a copy

of said plat being attached hereto and marked Exhibit A."

The description then recites that the property is that shown on a plat attached thereto.

The administrator's attacks upon this description are basically as follows: that the distances of the boundary lines are indefinite because most are qualified by the words "more or less" without otherwise showing terminal points; and that the directional bearings are indefinite, since they almost entirely recite "easterly," "northerly," "westerly" or "southerly" and the signals are not otherwise fixed.

For this position reliance is primarily placed upon such decisions as *Malone v. Klaer,* 203 Ga. 291 (46 SE2d 495) and *Rogers v. Manning,* 203 Ga. 771 (48 SE2d 527), which establish the rule that such "more or less" calls invalidate a description where each corner is not otherwise fixed; and such cases as *Smith v. Ga. Industrial Realty Co.,* 215 Ga. 431 (111 SE2d 37) and *Donaldson v. Nichols,* 223 Ga. 206 (154 SE2d 201), which hold that terms such as "easterly", or "about east", standing alone, are too indefinite to determine therefrom with any certainty the course intended thereby.

Also, the administrator contends that the acreage recital "109.1 acres, more or less" in the security deed is not curative of this deficiency, citing *Bennett v. Rewis,* 212 Ga. 800 (96 SE2d 257), and that the plat which is incorporated therein by reference does not cure it since it portrays the same defects.

Mrs. Grant, on the other hand, maintains that the description in the security deed is not void, and that each call is identifiable and ascertainable. She insists that any indefiniteness is corrected by incorporation of the plat, which serves as a key to identify the property described in the deed. She relies upon such cases as *Leverette v. Bullard,* 121 Ga. 534 (49 SE 591); *Deaton v. Swanson,* 196 Ga. 833 (28 SE2d 126); *Lankford v. Pope,* 206 Ga. 430 (57 SE2d 538); and *Herrington v. Rose,* 225 Ga. 452 (169 SE2d 312).

We do not agree. The same indefinite calls that are in the security deed are also in the plat, and thus compound the infirmity.

However, the plat has two keys which, in our opinion, do render the description sufficient.

First, a scale of 1 inch to 400 feet is shown on the face of the plat. This can be employed to locate precisely every call in the description, terminal points and configurations, thus making certain the references "more or less."

Second, a designation for north also appears on the face of the plat. With this it is possible to identify the exact bearings stated in the description, instead of only "northerly," "southerly" and other such generalities.

With these two aids the lines on the plat can be measured and the footage computed in accordance with the scale. Thus the tract of land intended to be included in the security deed should become apparent.

It should be noted that the word *"northwesterly"* in the call, "thence along said railroad right of way in a *northwesterly* direction a distance of 280 feet, more or less, to a point . . .," is a typographical error and should recite "northeasterly." (Emphasis supplied.) However, such an inaccuracy does not necessarily invalidate the description. See *Pressley v. Jennings,* 227 Ga. 366, 367 (180 SE2d 896).

For the foregoing reasons we conclude that the trial court erred in striking Mrs. Grant's counterclaim for specific performance of the agreement upon this particular ground.

It follows that this erroneous ruling requires that a new trial be had, consistent with the other holdings set forth in this opinion.

This ruling upholding the description renders unnecessary the treatment of Mrs. Grant's enumeration of error complaining of the refusal to permit her to introduce extrinsic evidence to correct any indefiniteness in the description of the security deed.

■ Mrs. Grant's enumeration complaining of the court's not allowing interest on the note to be computed on a compound basis and thus directing a verdict computed on simple interest only is lacking in merit. Nowhere in the transaction is there any obligation by Mr. Anthony to pay compound interest rather than simple interest.

■ Proceeding to the enumerations made by the administrator in the cross appeal, we will now pass upon those which assert that the trial court erred in not striking Mrs. Grant's counterclaim upon certain additional grounds.

We deal initially with the allegation that the court erred in overruling the administrator's motion to dismiss or strike Mrs. Grant's counterclaim insofar as she seeks specific performance of the purported agreement set forth in the letter above referred to because it attempts to engraft an additional consideration upon the note and security deed which are otherwise complete on their face as to consideration and make no reference to the letter as being given as partial consideration therefor.

The letter, which is typewritten, dated July 6, 1962, to Mrs. Grant from Mr. Anthony, states as follows: "This letter is to confirm our agreement entered into this date wherein I agree with you that if I die before this money is repaid that you may have this property, if you are in life, for the amount of said security deed."

The promissory note, also dated July 6, 1962, payable to Mrs. Grant was executed by Mr. Anthony for the principal amount of $10,000 with interest at 6% per annum payable in monthly instalments.

The security deed is also dated July 6, 1962, executed to Mrs. Grant by Mr. Anthony, and recites that the consideration is a note of the same date for $10,000 payable in monthly instalments, and contains the description of property as set forth in Division 2 of this opinion.

(a) The administrator contends that the note and security deed clearly and absolutely set forth the terms of the loan agreement, and that the letter varies, contradicts and conflicts with the security deed and note by denying the equity of redemption to Mr. Anthony's representative as provided for in the security deed and under the law of this State.

In this connection the administrator calls attention to the following recital in the security deed: "Grantee agrees to cancel this deed in accordance with the provisions of the Code of the State of Georgia as are now in force concerning

the cancellation of security deeds, when grantor shall have paid the indebtedness hereby secured and complied with all covenants and obligations herein."

It is argued that the representative of the grantor has this right and that the terms of the letter, if specifically enforced, would engraft an additional consideration upon the separate and distinct note and security deed, which are otherwise absolute on their face, and would also therefore impose an additional affirmative obligation, in conflict with the terms of the security deed. The administrator urges that the letter is a separate document which lacks consideration.

We cannot agree with this contention.

A study of the letter, note and security deed requires, in our view, the conclusion that they constitute a single transaction. They were executed at the same time, and between the same parties, and witnessed by the same person. The letter, instead of contradicting the security deed and note, merely provides for an alternative method of collecting the debt. By these three documents Mrs. Grant lent Mr. Anthony $10,000, and took title to the land subject to the right of redemption. Mrs. Grant also had the right to foreclose or sue at law if the debt was not paid, or to acquire the property in lieu of the indebtedness after Mr. Anthony's death if not already paid by him.

This court in *Whitley v. Patrick,* 226 Ga. 87, 88 (172 SE2d 692), said that "It is a fundamental principle of contract law that a written contract may be made by exchange of several different contemporaneous writings, which when taken together constitute a complete agreement." See also, *Colt Co. v. Hiland,* 35 Ga. App. 550 (2) (134 SE 142).

The reference to "said security deed" in the letter was obviously to the security deed involved here. Since it was a contemporaneous writing and thus a part of the same transaction, it did not require any consideration in addition to that already supporting the three-document agreement as a whole. If the letter had been subsequent, and therefore separate from the basic transaction, further consideration would have been necessary.

We construe the three documents to be in harmony and to stand together, so as to give effect to all.

For the foregoing reasons this enumeration is not meritorious.

(b) There is another reason why this ground of the administrator's motion to strike on the ground of lack of consideration was properly overruled. As the capable trial judge stated when the matter was being ruled upon, this ground was then premature. While the administrator had presented its evidence and rested its case, Mrs. Grant had not at that time had the opportunity to do so. The counterclaim, for the reasons stated in Division 1 of this opinion, was not subject to dismissal for failure to state a claim upon which relief can be granted, and the case awaited introduction of Mrs. Grant's evidence to afford the opportunity to show that no additional consideration was required.

(c) It follows that there was no variance or novation so as to eliminate the note and security deed and thus to require a new consideration for the letter, as insisted by the administrator in another enumeration.

Instead, the letter, the note and the security deed comprised one contemporaneous agreement which, as such, bore the consideration.

Thus these enumerations must fail.

■ We next treat the enumeration which alleges in substance that the trial court erred in overruling the administrator's motion to dismiss or strike Mrs. Grant's counterclaim for specific performance of the purported agreement, because the terms of the letter in regard to the land to be conveyed are so vague and ambiguous as to render the contract unenforceable.

We are mindful that the Statute of Frauds requires that a contract for the sale of land be in writing and that the property be described so as to be capable of identification. *Code* § 20-401 (4).

We are of the opinion that the contract here meets those requirements.

The agreement, as we ruled in Division 4, consists of the

letter, note and security deed, entered into contemporaneously between the same parties. These refer to each other. The security deed adequately describes the property, according to our ruling in Division 2. It also gives the names of the parties, the date, the consideration and the terms of the debt. The letter shows the date and parties. It also refers to "our agreement entered into this date." Particularly significant are references in the letter to "this property" and "said security deed" both of which can only mean those involved here.

We therefore regard this enumeration as not well taken.

■ Attention is next given to the enumeration that insists in substance that the trial court erred in overruling the administrator's motion to dismiss or strike Mrs. Grant's counterclaim for specific performance of the letter of agreement for the reason that it is a testamentary instrument not executed with the requisite formalities and therefore void and unenforceable.

Resolving this issue requires adherence to *Code* § 113-102, which provides as follows: "No particular form of words is necessary to constitute a will. In all cases to determine whether an instrument is testamentary in character or not, the test is the intention of the maker to be gathered from the whole instrument, read in the light of the surrounding circumstances. *If such intention is to convey a present estate, though the possession is postponed until after his death, the instrument is a deed;* if the intention is to convey an interest accruing and having effect only after his death, it is a will." (Emphasis supplied.) See *Gardner v. Thames,* 223 Ga. 378 (154 SE2d 926); Atkinson on Wills 193, § 44 (2d Ed.); Thompson on Wills 28, § 14 (3d Ed.).

The administrator urges that the letter clearly shows that it was not intended to take effect immediately, but could only take effect after the death of Mr. Anthony. It maintains that the instrument is in effect conditional; that Mrs. Grant could have the property if Mr. Anthony died before repaying the money. Thus it maintains that no present interest passed to Mrs. Grant. The administrator therefore

takes the position that the instrument is testamentary and cannot stand because it was not executed with necessary formalities.

This argument cannot prevail.

Here again our ruling in Division 4 controls. The agreement here consists not only of the letter, but also the note and security deed, all contemporaneous documents, and therefore one transaction.

Upon execution of those instruments there was an immediate conveyance of the title to the land involved here, subject to the equity of redemption. There was also the immediate creation of the relationship of debtor and creditor.

The only future provision of the over-all agreement was that regarding payment of the debt to Mrs. Grant, she becoming the owner of the property if Anthony had not paid it during his lifetime. Only the performance of that feature of the agreement was possible of future performance.

Unquestionably the agreement here took effect immediately. It was in no sense a future or conditional contract to be regarded as testamentary, but an in praesenti agreement.

Thus we conclude that the counterclaim was not subject to dismissal for any reason assigned.

■ We turn now to the enumeration which essentially contends that the trial court erred in overruling the administrator's motion to dismiss or strike Mrs. Grant's counterclaim insofar as she seeks performance of the letter because even if a portion of Mr. Anthony's debt under the note remains unpaid, she is guilty of laches in failing to obtain payment from him from its due date of June 6, 1962, until his death on December 21, 1970. It is argued that it would be unconscionable to permit Mrs. Grant to enforce the agreement by taking title to the property, the value of which is greatly in excess of the amount of the indebtedness, if any, and thereby benefit from the increase in value during that period.

(a) As we view the situation, there was no delay here so as to be the basis of laches.

The mere lapse of time is not itself laches. *Crews v. Crews,* 174 Ga. 45 (3) (162 SE 107) (two justices dissenting on other grounds); *Brown v. Brown,* 209 Ga. 620 (10) (75 SE2d 13) (one Justice not participating).

What this court said in *Equitable Bldg. &c. Assn. v. Brady,* 171 Ga. 576, 586 (156 SE 222) applies here: "[T]he delay must have worked injury, prejudice, or disadvantage to defendant or others adversely interested, or plaintiff must have abandoned or waived his right, or acquiesced in the assertion or operation of the adverse right, or lost his own right by estoppel; or sufficient time must have elapsed to create or justify a presumption against the existence or validity of plaintiff's right; or a presumption that if plaintiff was ever possessed of a right, it has been abandoned or waived or has been satisfied, or that in consequence of the delay the adverse party would be inequitably prejudiced by the enforcement of the right asserted." See also, *Eller v. McMillan,* 174 Ga. 729 (2) (163 SE 910) (one Justice dissenting on another ground).

Here, Mrs. Grant was within her rights in electing not to foreclose or sue upon the indebtedness from its becoming due in June of 1962 until Mr. Anthony's death in December of 1970. She was not required by the agreement to do either and therefore laches did not operate. Instead of laches, it is just as logical to surmise that Mrs. Grant indulged Mr. Anthony in not seeking to collect the debt during his lifetime. He was not prejudiced thereby.

She had the right to elect to rely upon terms of the agreement in which Mr. Anthony promised that "If I die before this money is repaid that you may have the property, if you are in life, for the amount of said security deed." Since Mr. Anthony died in December, 1970, and Mrs. Grant instituted the counterlaim for specific performance of the agreement in June, 1971, there could be no laches insofar as that short span of time is concerned.

Therefore, the exercise of Mrs. Grant's right pursuant to the aforesaid agreement cannot be regarded as laches. Thus it cannot be successfully maintained that increase in value

of the property or existence of other remedies prevents the exercise of her right to specific performance.

(b) Also, as held in Division 4, dismissal upon this ground would have been premature. This was an issue not for determination on the pleading but upon the evidence which at that time had not been completed.

For the foregoing reasons this enumeration cannot succeed.

■ We treat the last two enumerations together since they are related. In summary, one is that the trial court erred in refusing to admit in evidence certain checks and a ledger card, and the other that it erred in directing a verdict for Mrs. Grant on the $10,000 note without giving any credits for any conflicting claims or payments on these documents.

These enumerations are lacking in merit. None of these documents was shown to have any relation to the transaction involved here. Some affirmatively indicate that they do not.

We find no error in the cross appeal.

Direction is given that a new trial be had upon all issues in the case consistent with the rulings made herein.

*Judgment reversed on main appeal; affirmed on cross appeal. All the Justices concur.*